1809.
___
Lessee
of
M‘KNIGHT
v.
YINGLAND.

---

Lessee of MILES *against* POTTER and another.

*Sunbury,*
*Thursday,*
July 13.

THIS was an appeal from the decision of SMITH J. at a Circuit Court for *Centre* county in *May* 1807.

On the 28th *July* 1773, *A.* took a warrant from the land office descriptive of certain land, which was surveyed on other land the 15th *June* 1774. The survey was returned into office before the 26th *August* 1783; for on that day an indorsement was made upon the return by a clerk in the land office, that " *A.* believed the survey wrong laid, and requested the surveyor to adjust it, which he had agreed to." On the 17th *September* 1787, *A.* applied to the board of property for an order to survey his warrant upon the land it called for, which was granted; and the survey was accordingly made on the 26th *November* 1787, and returned the 27th *February* 1788.

On the 26th *October* 1772, *B.* took a warrant descriptive of certain land, and on the 19th *June* 1785, surveyed it upon land it did not call for, namely, the land called for in *A.*'s warrant of 1773, the premises in the ejectment. The survey was returned into office probably in 1785 or 1786, but at the latest on the 9th *June* 1787, and was patented the 14th *January* 1788.

*Held,* that *A.* by his neglect to follow up his objection to the survey made in 1774, had lost his claim to the land described in his warrant of 1773, and that *B.* was entitled to recover.

It was an ejectment for a tract of land, which the plaintiff claimed under the following title:

On the 26th *October* 1772, a warrant issued to *Samuel Miles* for 300 acres " on the sinking branch of *Penn's* creek " adjoining *Nesbit*, and near lands surveyed for *Reuben* " *Haines*, &c."

On the 19th *June* 1785, a survey was made under this warrant for 308 acres, 16 perches, (the premises in the ejectment) but it was not the land called for by the warrant.

This survey was marked on the books of the surveyor general as having been returned the 9th *June* 1785, which was a mistake, being ten days before the survey; but it was patented to *Miles* on the 14th *January* 1788.

The defendants claimed under the following title:

On the 28th *July* 1773, a warrant issued to *James Potter* (under whom the defendants claimed) for 200 acres " in the " great plains, to include the forks of the road in *Bald Eagle* " top;" which was said to be the land in dispute.

On the 15th *June* 1774, 215 acres $\frac{3}{10}$ths were surveyed upon this warrant by *William Maclay*, deputy surveyor, adjoining *John Cline* and others, which was not the land called for by the warrant.

When this survey was returned was also doubtful; but on the 26th *August* 1783, the following indorsement was made upon the return by *Edward Lynch*, then chief clerk in the surveyor general's office: " General *Potter* believes this sur- " vey was wrong laid, and requests *W. Maclay* to adjust it, " which he, said *Maclay*, has agreed to." 26th *August* '83. *E. Lynch.* There was also an indorsement on the return by the same person in the following terms: " General *Potter* " has taken out a warrant of the 1st *July* 1784, for this tract, " as he says himself." *E. L.*

On the 1st *July* 1784, *Potter* took another warrant for 150 acres " joining *George Woods* and the other part of the " tract said *Woods* lives on in the great plains, *Potter's* " top." This was not the tract *surveyed* under the warrant of 1773, but adjoined the land *called for* by that warrant; and on the 27th *November* 1787, a survey of 154½ acres was made, including part of the land in controversy.

On the 17th *September* 1787, general *Potter* represented to the board of property that his survey in 1774 was exe-

1809.

Lessee
of
MILES
v.
POTTER.

cuted upon land not called for by the warrant; and prayed an order for a survey on the land it described, which was granted, and a survey accordingly made on the 26th *November* 1787, and returned the 27th *February* 1788. This survey took in about one half of the plaintiff's survey in 1785.

It appeared in evidence that about the year 1775, general *Potter* sold a part of the tract said to be described in his first warrant, to one *George Woods*; who improved it, and except a short interval, had resided on it ever since. It also appeared that both colonel *Miles* and general *Potter* were actively engaged in the war of the revolution, which terminated in 1783.

The principal points in controversy at the trial were these: 1, Whether *Potter's* warrant of 28th *July* 1773, described the land in question: if it did not, the defendants had no title, as the survey for *Miles* was executed and returned before that of *Potter*. 2. If it did, then whether *Potter*, by his delay, was not to be postponed to *Miles*. 3. Whether the improvement of *Woods* did not at all events preclude the plaintiff's recovery.

The *first* was altogether a question of fact. The *third* was answered on the part of the plaintiff, by saying that the improvement of *Woods* was not claimed by the plaintiff, that *Woods* was not a party to the suit, and that general *Potter* never claimed the land under an improvement, but under his warrant and survey. The *second* was the material question; and upon this point,

It was contended by the plaintiff's counsel, that even granting his warrant to have been shifted, yet if it was surveyed and returned into office before another person acquired title to the land, it was as valid as if it called for the land surveyed. The sole question then was, whether *Potter* had acquired such a title, or whether from his laches, he was not to be postponed. The plaintiff's warrant was surveyed on the 19th *June* 1785, and returned into office. In the date of this return there was an obvious mistake either in the month, the day of the month, or the year; but to allow the objection the utmost latitude against the plaintiff, the survey was returned on the 9th *June*, in 1786 or 1787, either of which points of time was prior to *Potter's* application to the board of property; and in addition to this, when the plaintiff made

his survey, he knew by the official return that *Potter's* warrant had been laid upon other land. On the other hand the defendants' warrant was surveyed on land not in question, in the year 1774. When it was returned into office is a matter of doubt, but it was before the 26th *August* 1783. On that day *Potter* certainly knew that his warrant was shifted. He probably knew of it at the time of the survey, as warrantees usually superintend the survey. He relied upon a correction by the deputy surveyor, which he must or ought to have known was impossible after the survey was returned, without a special order from the board; and he took no step to vacate the first survey, or to obtain other land upon his warrant, until more than four years had elapsed from its return, until two years after the plaintiff's survey, and one or two years after its return. Such neglect as this with a full knowledge of all the circumstances, ought to postpone his title to one consummated by a return into office in the mean time. The war was an excuse for delay only while it lasted; from 1783 to 1787 was a period of continued laches on the part of *Potter*, for which he ought to suffer, and not the plaintiff.

It was answered by the defendants' counsel, that the warrant of the plaintiff being shifted, it vested no title until return into office, or actual notice of survey. Actual notice was not brought home to general *Potter*, and when the survey was returned had not been shewn. The date of the return was impossible; and any other date must be put argumentatively, for there was no reason to take either of the dates conjectured by the plaintiff's counsel. The defendants' title then stood thus: they had a warrant descriptive of the land, and the only question was, whether it had been abandoned. The war was a clear excuse up to 1783. *Potter* then objected to the first survey, and requested a new one. *Woods* was in possession of the land under him; and his objection on the official return, with the possession of *Woods*, were notice to *Miles* two years before his survey, that *Potter* had not relinquished the land. The agreement of *Maclay* to adjust the survey, even if he was not authorized to do it, was at least an excuse to *Potter;* for he relied upon it, and whether correctly or not was the same thing as to the question of laches. In *September* 1787 he obtained the order of the board, the survey was made, and his title was complete. The attempt

to defeat it was defective in two particulars; *first*, by setting up a prior return of survey, when that return was not shewn to have been made before the order of the board of property, and the survey for *Potter;* and *secondly*, by setting up laches, when the plaintiff was himself guilty of it in neglecting a survey for twelve years after his warrant, and general *Potter* was excused by his reliance upon the promise of the deputy surveyor.

The case was left very much to the jury by his Honour, as the decision principally involved questions of fact, and the jury found for the defendants.

A motion was then made for a new trial, which was overruled; his Honour remarking at the same time that the verdicts did not perfectly satisfy his mind; but he overruled it without prejudice, that the plaintiff might have the full benefit of an appeal.

The cause was now argued by *Huston* and *Duncan* for the plaintiff, and by *S. Riddle* and *D. Smith* for the defendants, upon the same grounds which were taken at the trial; and the opinion of the court was delivered by the Chief Justice, after stating the facts in general, and particularly that the plaintiff's survey, even if there was a mistake in the year, must have been returned at the latest on the 9th *June* 1787, because in *January* 1788, he obtained a patent.

Tilghman C. J. The warrant to general *Potter* calls for " 200 acres of land in the great plains, to include the forks " of the road." It may be applied not improperly to the lands in dispute, though in some respects it is loose; because not only the plains but a considerable quantity of wood land, and also *Penn's* creek are included in the present survey; whereas the " great plains," strictly speaking, take in neither woodland nor creek. At what time general *Potter* was informed of the survey made by *William Maclay*, does not appear. Perhaps he did not know of it immediately; and considering the circumstances of the country during the revolutionary war, which commenced in 1775, and ended in 1783, and in which the general took an early and active part, it may be thought not extraordinary that we hear of no objection to the survey till *August* 1783. But having made his objection then, he ought to have followed it up. He should have ap-

plied to the board of property sooner; for it was not in the power of *William Maclay* to make any alteration in a survey returned by him, without a new authority from the land office. It was too long to suffer the matter to rest from *August* 1783 to *September* 1787. In the mean time, viz. 19th *July* 1785, the plaintiff appropriated the land; and although his warrant was shifted, yet his right attached from the time of the return of his survey, which for the reason before assigned, must in all probability have been prior to general *Potter's* application to the board of property.

Some stress has been laid on the circumstance of general *Potter's* having sold 100 acres of land, part of which at least is included in his survey, to *George Woods* about the year 1776, who made an improvement on it, and still holds it. To this it has been answered that the plaintiff claims no part of *Woods'* improvement; and that *Potter* never claimed under an improvement, but under his warrant and survey. *Woods* is no party to this suit, nor is there evidence sufficient to invalidate the plaintiff's claim against the defendants by reason of any title in *Woods*.

On the whole of this case, we think justice requires that the matter should be submitted to the consideration of another jury; especially as the plaintiff will be barred by the act of limitations, if judgment is entered on the verdict which has been given.

New trial awarded.