# Smith et al. *versus* Walker.

1. In an ejectment for unseated land plaintiff claimed under a warrant issued to R. M. on April 10th 1794, surveyed September 23d 1849, and returned to the Land Office and accepted three days later. He next proved from the "Old Purchase Blotter" that said warrant was, on September 17th 1794, paid for in behalf of "Ingersoll, &c." He then put in evidence the will of Jared Ingersoll, proved December 30th 1822, and that of Alex. James Dallas, proved January 23d 1817, whereby they devised all their real estate to their respective wives, but without specifically mentioning the tract in controversy. He then gave in evidence a deed from said wives for said tract, in 1833, and deduced title from the vendee to himself, showing also that a patent for said tract had been issued to his immediate vendor in 1874. Defendants objected to the admission of the wills of Ingersoll and Dallas in evidence, and to all the offers of proof of devolution of the title from them, because there was nothing in the case to show that *Jared* Ingersoll was the person who paid the purchase-money, or to connect him or Dallas in any way with the title. *Held*, that there was no presumption that Jared Ingersoll was not the Ingersoll mentioned in the blotter, but that, on the contrary, the undisputed claim to the warrant for the land in question by the devisees of Jared Ingersoll and Dallas and their vendees subsequent to 1833, was presumptive evidence in favor of the identity of said Jared with the person paying the purchase-money. *Held*, further, that although there was nothing to show any connection of Dallas with the title, plaintiff had nevertheless deduced a valid title to the whole of the tract to himself, for he held the interest of Jared Ingersoll, who, assuming that Dallas had no claim to the warrant, must have been

possessed of the whole warrantee title to the tract. *Held,* therefore, that the admission of the evidence did not constitute ground for reversal.

2. Where a return of survey on a shifted warrant is accepted by the Land Office, and subsequently a caveat is filed in said office to prevent the issuing of a patent until a question of interference with land already occupied is settled, the Board of Property has jurisdiction only to settle the conflicting claims, and cannot set aside and reject the return of survey on the shifted warrant so as to render the same invalid against subsequent warrantees.

3. A shifted survey, if fairly made, returned and accepted by the proper authorities, will, where there is no intervening and opposing right, hold and secure the land from the time of acceptance.

4. Where a deputy surveyor surveys more land than is called for by a warrant, the surveyor-general may accept such survey without a special warrant of acceptance, provided that the warrantee pays for the surplus at the time of such acceptance.

5. Where the surveyor-general has accepted a survey embracing more land than is called for in the warrant, the presumption is, in the absence of evidence, that he has received the additional cost of the surplus from the warrantee.

May 23d 1881. Before Mercur, Gordon, Paxson, Trunkey, Sterrett, and Green, JJ. Sharswood, C. J., absent.

Error to the Court of Common Pleas of *Huntingdon county :* Of May Term 1880, No. 147.

Trespass quare clausum fregit, et de bonis asportatis, by David Walker, against George L. Smith and others. Plea, not guilty.

On the trial, before Dean, P. J., the following facts appeared : The alleged trespass was committed on a tract of mountain land on which the defendants entered and cut and carried away timber. The plaintiff claimed title and the right to possession under articles of agreement of sale from one George W. Steever. He showed title out of the Commonwealth, and to his vendor, as follows :—

1794, April 10th. Warrant to Robert Miller for "400 acres of land adjoining land this day granted to John Miller, in the county of Bedford."

1849, September 28th. Survey returned, in which it is certified, " Re-surveyed the 23d day of September 1849, in pursuance of a warrant granted to Robert Miller 10th April 1794." Indorsed " Accepted."

The plaintiff showed, by the " Old Purchase Blotter," that on September 17th 1794, John Hall, on behalf of "Ingersoll, &c.," (*sic*) paid purchase-money in specie, £2890, and fees, £144 10*s.*, on 289 warrants of 400 A. each, including the Robert Miller.

He then offered in evidence the will of Jared Ingersoll, dated October 17th 1822, proved December 30th 1822, whereby he devised his real estate to his wife Elizabeth. Objected to, because there is nothing to show that *Jared* Ingersoll was the Ingersoll who paid the purchase-money. Objection overruled. Exception (1st assignment of error).

Plaintiff then offered will of Alexander James Dallas, dated August 10th 1804, proved January 23d 1817, whereby he devised his real estate to his wife, to be followed by deed for the Robert Miller tract from the widows of Ingersoll and Dallas to Abraham Kerns. Objected to as irrelevant, nothing having been shown to connect Dallas with the title. Objection overruled. Exception.

Deed, February 26th 1833, Elizabeth Ingersoll and Arabella Maria Dallas to Abraham Kerns, for, inter alia, the Robert Miller tract. Recorded June 18th 1833, in Bedford county.

Deed, August 19th 1834, Abraham Kerns and wife to Samuel Barclay, for the undivided one-half part of the lands surveyed on 259 warrants, dated April 10th 1794, the warrantee names and locations particularly described in deed from Elizabeth Ingersoll and Maria Dallas to said Kerns. Objected to, as the Robert Miller warrant is not specifically named in the deed. Objection overruled. Exception.

The plaintiff then gave in evidence mesne conveyances from Samuel Barclay and the devisees of Abraham Kerns to George W. Steever, for said tract; Patent to Steever, et al., January 2d 1874, and the articles of agreement from Steever to the plaintiff, dated March 6th 1874.

The evidence of surveyors, and documentary evidence, showed the following facts: The Robert Miller warrant was a "shifted" warrant, and really called for the survey of land thirty miles south of where the survey was made; nevertheless, the survey was "accepted" and the purchase-money paid, except for an excess of thirty-eight acres, for which the purchase-money was paid January 2d 1874, when the patent issued.

On the survey on file is also the following indorsement: "April 5th 1852. Rejected. See minutes of Board of Property." These minutes show that at a meeting of the Board of Property, in the matter of a suit between Robert Miller and one Mierly, the following entry was made:—" A warrant issued to Robert Miller for four hundred acres of land in Bedford county, dated 10th day of April, 1794, adjoining lands granted to John Miller, same day. The defendant claims on a warrant in his own name, dated the 29th day of January, 1850. The warrant to Robert Miller being a descriptive warrant, and located more than ten miles from the John Miller

warrant, for which it calls as the only adjoiner, and located in direct violation of the general instructions given to every deputy and county surveyor. The return of survey on the warrant to Robert Miller calls for John Miller as an adjoiner, but it appears that John Miller was settled on adjoining lands and had no warrant, but was calculated to mislead the officers of the Land Office, and was the cause of the acceptance of the survey.

"In view of the above facts the board *reject* the survey of Robert Miller, it being a settled and established practice not to accept surveys located different from the original call in the warrant."

Subsequent minutes of the Board of Property show that, on petition of George W. Steever and others, presented at a meeting held December 17th 1873, asking "that the Robert Miller survey (inter alia) may be reinstated among the accepted surveys on file in the Land Office, to enable them to procure a patent therefor," the board made the following order:—"And now, to wit: Dec. 17th 1873, after consideration of the petition and certificates thereto attached, the surveys made and returned in pursuance of warrants in the names of Robert and William Miller, Nos. 646 and 647 Bedford, are hereby restored to the regular files, and patents directed to issue to the owners on payment of any arrearages and the fees."

The patent was thereupon issued to Steever.

The defendants claimed, under the following title, a tract of land which it was admitted interferes with the Robert Miller tract as claimed by plaintiff:

1852, April 20th.   Warrant to John Crotsley 300 A. of unimproved land in Cass township, Huntingdon county.

1852, May 4th and 5th.   Survey, 302 A. 108 p. and allowance. June 17th 1852.   Excess paid, and survey accepted.

1873.   Patent to John Crotsley for said tract.

Title from Crotsley to defendants for the *locus in quo.*

The defendants presented, inter alia, the following points:—

1. That the plaintiff's claim being founded on a warrant dated in 1794, in the name of Robert Miller, and no conveyance or assurance from Robert Miller or any other person who paid the purchase-money having been made to the plaintiff or any other person, predecessors in his alleged title, so far as the evidence shows, the plaintiff has not title and cannot recover. *Answer.*   This point is denied.

2. That there being no proof that "Ingersoll," named in the old purchase voucher, as having paid the purchase-money on 258 warrants, of which the Robert Miller is one, was Jared In-

gersoll, the plaintiff has failed to show that he is the owner of any part of the land surveyed on the Robert Miller warrant or the land surveyed on the same, and he cannot recover. *Answer.* This point is denied.

3. That the warrant in the name of Robert Miller being a descriptive warrant and calling " for land this day granted to John Miller," and the survey thereon in 1849 having been shifted from its true location, and not calling for any land granted to John Miller, and the said survey having been on April 5th 1852, rejected by the " Board of Property," the warrant issued on April 20th 1852, to John Crotsley, followed by a survey made on April 26th 1852, and a patent issued to him on August 26th 1873, whilst the Robert Miller survey was lying in the rejected files of the Land Office, vested in John Crotsley a good title as against the Robert Miller, and the plaintiff cannot recover. *Answer.* Our answer to this point is reserved, with the right to enter judgment on verdict *non obstante veredicto,* should there be a verdict for plaintiff.

4. That as against the John Crotsley title, perfected, while the Robert Miller survey laid in the Land Office a rejected survey, the Robert Miller title cannot prevail. *Answer.* Our answer to 3d point is our answer to this point.

7. That the evidence does not show any such possession in the plaintiff, actual or constructive, as to entitle him to recover in trespass. *Answer.* This point is denied.

The court, in the general charge, said, inter alia : " We instruct you that the facts shown from the Old Purchase Blotter, and the fact that the devisees of Ingersoll and Dallas, as early as 1833, openly and notoriously treated the warrants as theirs by conveying them, are sufficient, after this lapse of time, to warrant you in presuming that Ingersoll and Dallas were the owners of these warrants. They are sufficient to warrant you in inferring that Jared Ingersoll and Alexander M. Dallas were meant by ' Ingersoll,' in so far as the records of the Land Office show in whose behalf the purchase-money was paid."

Verdict for the plaintiff for $130, subject to the opinion of the court on the points reserved (defendant's 3d and 4th points, *supra*). The court subsequently entered judgment on the verdict, DEAN, P. J., filing the following opinion on the points reserved :

" I am of the opinion that the action of the Board of Property, after the acceptance of the survey, in having it marked rejected, was without authority of law, and therefore void, in so far as it is sought to affect the title of the owner of the survey thereby : Cassiday *v.* Conway, 1 Casey, 240 ; Chew *v.* Morton, 10 Watts, 321, and other authorities to the same point.

[Smith *v.* Walker.]

When the Commonwealth undertook to grant the same land to John Crotsley by accepting the survey to him of 17th June 1852, it attempted to vest in him a title which she did not own, except for the purposes of a lien to enforce payment of the purchase-money on the original grant; therefore, defendants' 3d and 4th points should have been denied, which is now accordingly done, and it is ordered that judgment be entered on the verdict for plaintiff, March 15th 1880."

The defendants thereupon took this writ of error, assigning for error, inter alia, the admission of the evidence objected to, as above recited, and the answers to their points.

*W. H. Woods* and *R. B. Petrikin*, for the plaintiffs in error.—The plaintiff did not claim to be in *actual* possession at the time of the entry by defendants, and his alleged *constructive* possession depended wholly on his title, which he was bound to make out affirmatively. The failure to identify the " Jared Ingersoll," through whom he claimed, with the " Ingersoll, &c." who paid the purchase-money, was a missing link, and fatal to his recovery. The court erred in admitting the will of Jared Ingersoll without such identification. There was even less to warrant the admission of the will of Dallas, as nothing had been shown to connect any one of that name with the title : Burford *v.* McCue, 3 P. F. Smith, 431; Sailor *v.* Hertzogg, 2 Barr 182; Sewall *v.* Evans, 4 Ad. & Ellis, 632; Brotherline *v.* Hammond, 19 P. F. Smith, 133.

The Robert Miller warrant was a descriptive one, and called for land " this day granted to John Miller." There was no attempt to locate it until 1849, when it was " shifted " from its true location thirty miles, and returned to the Land Office, with a false call, and with 38 acres of excess. The indorsing of this survey " accepted," was irregular and illegal, for two reasons :

1st. Because the warrant was for 400 acres. The survey as returned is for 438 acres. The excess was not previously paid, and the survey could not legally be accepted: Act 13th March 1817, § 1, Purdon Digest, 915; Act 6th April 1830, § 2, Dunlop, 444; Act 21st April 1869, § 1, Purdon Digest, 916; Raush *v.* Miller, 12 Harris, 281.

2d. Because it was not located according to the call " adjoining land this day granted to John Miller," but was " shifted " some thirty miles, and the false call of John Miller was written in the draft of survey. See instructions to county surveyors, issued from 1701 to 1833, printed in Annual Report of Secretary of Internal Affairs, for 1877, p. 50.

[Smith v. Walker.]

The Board of Property had full power to reject the survey: Act of April 5th 1782, § 2, Purdon Digest, 890; Hubley v. White, 2 Yeates, 140; Dunning v. Washmudt, 2 Yeates, 86; Eddy v. Faulkner, 3 Yeates, 580; Bryson v. Howe, 8 S. & R. 409; Dixon's Exrs. v. Crist, 17 S. & R. 58. The owners not having brought ejectment within six months after the rejection of the survey, were forever barred, and their application to have the survey reinstated, after their abandonment for more than twenty-one years, was illegal: Shoenberger v. Becht, 5 Watts 194; French v. Seely, 6 Watts 292; Wilson v. Altemus, 2 W. & S. 260. The Crotsley warrant, survey and patent were issued after the Robert Miller survey was rejected, and before it was reinstated, and created a good title: Hoffman v. Bell, 11 P. F. Smyth 454; Chambers v. Mifflin, 1 P. & W. 74; Star v. Bradford, 2 P. R. 397; Foust v. Ross, 1 W. & S. 506; Adams v. Jackson, 4 W. & S. 74–84; Emery v. Spenser, 11 Harris, 275–277. The judgment of the court on the reserved points was erroneous, and the cases relied on in the opinion do not sustain it.

*R. M. Speer* (*E. S. McMurtrie* with him), for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, June 13th 1881.

Prima facie the title of the plaintiff was good. He claimed some sixty acres and ninety-nine perches of a certain tract warranted to one Robert Miller, on the 10th of April 1794, which was surveyed on the 23d of September 1849, and returned to the Land Office and accepted three days thereafter. As appears from the " Old Purchase Blotter," this warrant, with 288 others, was paid for by John Hall, in behalf of " Ingersoll, &c.," on the 17th of September 1794. This payment of purchase-money vested the title to these warrants in Ingersoll and his associate, if any such he had. The plaintiff then, further, in order to connect himself with this title, offered the will of Jared Ingersoll, proved December 30th 1822, devising his estate to his wife Elizabeth, and also the will of Alexander James Dallas, proved January 23d 1817, devising his estate to his wife Arabella Maria. These were followed by the deed of these devisees to Abraham Kerns, dated February 26th 1833, conveying the whole of the warrants above recited, including the Robert Miller. Then followed the offer of the deed of Abraham Kerns, dated 19th of August 1834, to Samuel M. Barclay, conveying the one-half part of 259 warrants, and referring to the deed above recited for a more particular description.

[Smith *v.* Walker.]

All the above mentioned offers were objected to on the ground, first, that there was nothing in the case to show that Jared Ingersoll was the "Ingersoll" who paid the purchase money as above stated; second, that no title was shown in either Ingersoll or Dallas to the Miller survey. We think, however, with the learned judge of the court below, that this objection cannot be sustained. It is true that Ingersoll is a family name, but it does not follow, in the absence of proof to the contrary, that there was at that time any other bearing that family name except Jared, who claimed these warrants, or who professed to have an interest in them. Then, again, the letters, " &c.," without explanation, mean nothing, and may be disregarded. We may, therefore, exclude Dallas from the title altogether, and yet vest title in the plaintiff, for if Mrs. Ingersoll, who, in that case, would be the sole owner of the Miller warrant, chose to join in a deed with Mrs. Dallas, conveying the whole of this land to Kerns, she would be estopped from denying his title. We also agree with the court below, that the notorious and undisputed claim to these warrants by the devisees of Ingersoll and Dallas, and their vendees, from 1833 down to the location of the warrant in 1849, was presumptive evidence in favor of the fact that Jared Ingersoll was identical with the "Ingersoll" whose name is found on the "Old Purchase Blotter." This disposes of the 1st, 2d, 3d, 4th, 6th and 7th assignments of error.

The only remaining assignments which we consider of sufficient importance for notice are the 8th and 9th, which except to the court's refusal to affirm the defendants' 3d and 4th points. Those points are as follows:—"That the warrant in the name of Robert Miller being a descriptive warrant, and calling for land 'this day granted to John Miller,' and the survey thereon, in 1849, having been shifted from its true location, and not calling for any land granted to John Miller, and the said survey having been, on the 5th of April 1852, rejected by the Board of Property, the warrant issued on the 20th of April 1852, to John Crotsley, followed by a survey made 4th and 5th of May 1852, and a patent issued to him on the 26th of August 1873, while the Robert Miller was lying on the rejected files of the Land Office, vested in John Crotsley a good title, as against the Robert Miller, and the plaintiff cannot recover."

2. "That as against the John Crotsley title, perfected while the Robert Miller lay in the Land Office, a rejected survey, the Robert Miller title cannot prevail."

We think the affirmance of these points was well refused.

In the first place, there was but a single question before the Board of Property, and that was whether the Myerly warrant

[Smith v. Walker.]

was well laid upon the land already occupied by the Miller survey. The object of the caveat was to settle this question and this alone, and when the board went beyond this and attempted to set aside and reject the whole of the Miller survey, which had been returned and accepted some two years before the date of the meeting of that board, it exceeded its jurisdiction, and its judgment was, to that extent, void. So far as the Myerly location was concerned, no doubt, the sentence of that body was operative, and as no attempt was made, within the six months prescribed by the Act of 1792, to impeach it, it must now be regarded as final and conclusive. But we cannot see what this warrant has to do with this case. The defendants do not claim under it, but under the Crotsley warrant of May 5th 1852, and as the evidence nowhere shows whether the Myerly warrant embraced four, or four hundred, acres of land, it was good for nothing as an outstanding title.

But, in the second place, the reasons given by the Board of Property for the rejection of the Miller warrant, and which are now relied upon to reverse the court below and defeat the plaintiff, are not sound. I find it ruled as early as 1797, in the case of Irwin v. Moore, per YEATES, J., reported in 2 Smith's Laws, 187, that a shifted survey, if fairly made, returned and accepted by the proper authority, when there is no intervening opposing right, will hold and secure the lands. And it was said, in Funston v. McMahon, Idem 188, that the practice of all deputy surveyors to shift lost locations was perfectly familiar to the whole country, and was never questioned before the revolution, but that it was necessary that a return should be made thereof to the office of the surveyor-general, in order to operate as constructive notice to other applicants. And in McKinney v. Houser, Idem 190, it was said, by SMITH, J., that the acceptance of such surveys was never refused by the Land Office, though the surveyor had no direct authority for making them. Kyle v. White, 1 Binn. 246, is another case in point, as are also Miles v. Potter, 2 Binn. 65; Fox v. Lyon, 9 Ca. 474; Mix v. Smith, 7 Barr 75, and many other authorities, which it would be useless to cite.

It will thus be found that the reasons given by the board for the rejection of the Miller warrant were altogether unsound, and opposed to the whole current of authority, and we must, therefore, consider the Miller warrant effective, as against the Crotsley survey.

During the argument objection was taken to the Miller survey, because it embraced an excess of thirty-eight acres over the amount called for by the warrant. But an objection such as this cannot be sustained, since the Act of 1819, which author-

[Fries *v.* Pennsylvania Railroad Co.]

izes the surveyor-general to accept such surveys without a warrant of acceptance.

All that is now required is that the surplus be paid for at the time of acceptance. This, however, is a matter for the surveyor-general, for the neglect of which he must answer to the Commonwealth, and as the legal presumption is that that officer has done his duty (Burford *v.* McCue, 3 P. F. S. 427), a question of this kind has no standing in the case in hand.

Judgment affirmed.